UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**ANDRÉ PAUWELS**

      *Plaintiff,*

  v.

**THE BANK OF NEW YORK MELLON CORPORATION**, **THE BANK OF NEW YORK MELLON, DELOITTE LLP, DELOITTE USA LLP**, and **DELOITTE TAX LLP**

      *Defendants*.

Case No. 1:19-CV-02313

**JOINT PROPOSED JURY INSTRUCTIONS**[1]

---

[1] Per the Court's October 31, 2025 Memo Endorsement [Dkt. 239], this document contains the parties' individual versions of the jury instructions to the extent the parties disagree, along with each party's respective explanation of that disagreement. Defendants provided the text of its disagreement footnotes to Plaintiff at 7:55 pm. Plaintiff provided his disagreement footnotes to Defendants at 10:22 pm. BNY takes the position that Plaintiff's email came too late for BNY to have an opportunity to include any response; BNY will therefore be prepared to discuss Plaintiff's positions at the November 6 pre-trial conference. Plaintiff disagrees with Defendants' characterization, but in any case will also be ready to discuss these documents and both parties' positions at the November 6 conference.

## TABLE OF CONTENTS

**GENERAL INSTRUCTIONS** ........................................................................................3

    INSTRUCTION NO. 1 ...........................................................................................3

    INSTRUCTION NO. 2 ...........................................................................................5

    INSTRUCTION NO. 3 ...........................................................................................7

    INSTRUCTION NO. 4 ...........................................................................................8

    INSTRUCTION NO. 5 ...........................................................................................9

    INSTRUCTION NO. 6 .........................................................................................11

    INSTRUCTION NO. 7 .........................................................................................12

    INSTRUCTION NO. 8 .........................................................................................13

    INSTRUCTION NO. 9 .........................................................................................14

    INSTRUCTION NO. 10 .......................................................................................16

    INSTRUCTION NO. 11 .......................................................................................17

    INSTRUCTION NO. 12 .......................................................................................19

    INSTRUCTION NO. 13 .......................................................................................20

    INSTRUCTION NO. 14 .......................................................................................21

    INSTRUCTION NO. 15 .......................................................................................22

**INSTRUCTIONS AS TO SPECIFIC CLAIMS** ................................................23

    PLAINTIFF'S INSTRUCTION NO. 16 .............................................................23

    DEFENDANTS' INSTRUCTION NO. 16 ..........................................................25

    PLAINTIFF'S INSTRUCTION NO. 17 .............................................................27

    DEFENDANTS' INSTRUCTION NO. 17 ..........................................................32

    PLAINTIFF'S INSTRUCTION NO. 18 .............................................................36

    DEFENDANTS' INSTRUCTION NO. 18 ..........................................................38

**FINAL INSTRUCTIONS CONCERNING PROCEDURE** ..............................39

    INSTRUCTION NO. 19 .......................................................................................39

    INSTRUCTION NO. 20 .......................................................................................40

    INSTRUCTION NO. 21 .......................................................................................41

    INSTRUCTION NO. 22 .......................................................................................42

## GENERAL INSTRUCTIONS

## INSTRUCTION NO. 1

Introduction[2]

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

My duty at this point is to instruct you as to the law. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure.

It is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it. You must apply the law to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. Do not be concerned about the wisdom of any rule of law stated by me. And do not substitute your own notions or opinions of what the law is or ought to be. You must follow and apply the law as I instruct you.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and these instructions, you must follow my instructions.

---

[2] Adapted from 3 Fed. Jury Prac. & Instr. § 103:01 (6th ed.).

Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So it's critical that I use exactly the right words.

Nothing I say in these instructions indicates I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. Remember, you are to consider these instructions together as a whole; you are not to isolate or give undue weight to any single instruction.

**INSTRUCTION NO. 2**

Evidence in the case[3]

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to *[and all facts and events that may have been judicially noticed]*.

What, then, is *not* evidence? I instruct you that the following does not count as evidence: Testimony that I have stricken or excluded is not evidence and must be entirely disregarded. If certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the purpose I indicated.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. Thus, if your recollection of the facts differs from the lawyers' opening statements, questions to witnesses, or summations, it is your recollection that controls, not theirs'. For the same reasons, you are not to consider a lawyer's or a party's questions as evidence. Only the witnesses' answers are to be considered "evidence," not the questions. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

[*I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, unless otherwise instructed you must accept my declaration as evidence and regard as proved the fact or event that has been judicially noticed.*]

---

[3] Adapted from 3 Fed. Jury Prac. & Instr. § 103:30 (6th ed.).

Any exhibit that was not received into evidence is not evidence. Thus, exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Finally, any statements that I may have made do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen. You, as jurors, are the sole judges of the facts and are not bound by my comments or opinions.[4]

---

[4] Adapted from 3 Fed. Jury Prac. & Instr. § 103:33 (6th ed.).

**INSTRUCTION NO. 3**

Consideration of the evidence—Corporate party's agents and employees[5]

You have heard considerable evidence about the actions of corporations, and in particular, the actions of The Bank of New York Mellon Corporation and The Bank of New York Mellon ("BNYM" or the "Bank")[6], which is a corporation.

A corporation may act only through natural persons who are its agents or employees. Generally, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

---

[5] Adapted from 3 Fed. Jury Prac. & Instr. § 103:31 (6th ed.).

[6] **DISAGREEMENT**.   The parties disagree on whether to use "BYN" or "BNYM" when referencing the Defendants.  Plaintiff has used "BNYM" consistently, and the Second Circuit has used "BNYM" as well.  *Pauwels v. Deloitte LLP*, 83 F.4th 171 (2d Cir. 2023) (throughout). Defendants have used "BNY" consistently, as has this Court in its summary judgment decision. *Pauwels v. Bank of New York Mellon Corp.*, 2025 WL 1880742 (S.D.N.Y. July 8, 2025) (throughout).

## INSTRUCTION NO. 4

### Preponderance of the evidence[7]

André Pauwels ("Mr. Pauwels") has the burden in a civil action, such as this, to prove every essential element of Mr. Pauwels' claim by a preponderance of the evidence. If Mr. Pauwels should fail to establish any essential element of Mr. Pauwels' claim by a preponderance of the evidence, you should find for BNYM as to that claim.

What does "preponderance of the evidence" mean? To prove a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard applicable in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

---

[7] Adapted from 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.).

**INSTRUCTION NO. 5**

<u>Direct and circumstantial evidence</u>[8]

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning that the sun was shining and it was a nice day outdoors. Assume that the courtroom shades were drawn and you could not look outside. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet. Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact. As you can see, the matter of drawing inferences from facts in evidence is not a matter

---

[8] Adapted from 3 Fed. Jury Prac. & Instr. § 104:05 (6th ed.).

of guesswork or speculation. An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proven.

Many material facts, such as state of mind, are rarely easily proven by direct evidence. Usually such facts are established by circumstantial evidence and the reasonable inferences you draw. Circumstantial evidence may be given as much weight as direct evidence. The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence. A greater degree of certainty is not required of circumstantial evidence. You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

**INSTRUCTION NO. 6**

<u>Inferences[9]</u>

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

There are times when different inferences may be drawn from the evidence. Mr. Pauwels asks you to draw one set of inferences. BNYM asks you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

---

[9] Adapted from 3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.).

## INSTRUCTION NO. 7

### Rulings on Evidence and Objections

As I have already explained, you should draw no inference or conclusion for or against any party by reason of lawyers making objections or my rulings on such objections. By the same token, nothing I say is evidence. If I commented on the evidence at any time, do not accept my statements in place of your recollection or your interpretation. It is your recollection and interpretation that govern. Further, do not concern yourself with what was said at side bar conferences or during my discussions with counsel. Those discussions related to rulings of law.

At times I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times I asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

## INSTRUCTION NO. 8

<u>Expert witnesses</u>[10]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses," and you have heard testimony in this case from one such expert witness, Mr. Slim Bentami.

An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. An expert is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can help you understand the evidence and reach an independent decision on the facts.

In weighing the expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept a witness's testimony merely because he is an expert. Nor should you substitute his testimony for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

---

[10] Adapted from 3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.).

## INSTRUCTION NO. 9

### Discrepancies in testimony[11]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

---

[11] Adapted from 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.).

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

## INSTRUCTION NO. 10

### Use of depositions as evidence[12]

During the trial, certain testimony has been presented by way of deposition. A deposition consists of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case. The testimony of a witness who, for some reason, is not present to testify from the witness stand may be presented by deposition, either via a written transcript of the testimony at the deposition or by video recording of the deposition testimony. The deposition testimony offered as evidence is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

---

[12] Adapted from 3 Fed. Jury Prac. & Instr. § 105:02 (6th ed.).

## INSTRUCTION NO. 11

### Witness Credibility[13]

You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

To that end, I am going to give you a few general instructions as to how you may determine whether witnesses are credible and reliable, whether the witnesses told the truth at this trial, and whether they know what they were talking about. It is really just a matter of using your common sense, your good judgment, and your experience.

First, consider how well the witness was able to observe or hear what he or she testified about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly and/or candidly? Were the witness's answers direct or were they evasive? Consider the witness's demeanor, manner of testifying, and the strength and accuracy of the witness's recollection. Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider the substance of the testimony. How does the witness's testimony compare with other proof in the case? Is it corroborated or is it contradicted by other evidence? If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?
You may consider whether a witness had any possible bias or relationship with a party or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness unworthy of belief. These are simply factors that you may consider.

---

[13] Adapted from 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed.).

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

In summary, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

If a witness made statements in the past that are inconsistent with his or her testimony during the trial concerning facts that are at issue here, you may consider that fact in deciding how much of the testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement, or whether it was an innocent mistake. You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency, and, if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone—not the lawyers, not the witnesses, and not me as the judge—to decide the credibility of witnesses who testified and the weight that their testimony deserves. The ultimate question for you to decide in passing upon credibility is: Did the witness tell the truth before you?

## INSTRUCTION NO. 12

### Effect of prior inconsistent statements or conduct[14]

You may have heard evidence that, at some earlier time, witnesses may have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not for the truth of the prior statement, but only for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

---

[14] Adapted from 3 Fed. Jury Prac. & Instr. § 105:09 (6th ed.).

## INSTRUCTION NO. 13

<u>Effect of refusal of witness to answer</u>[15]

The law requires every witness to answer all proper questions put to the witness at trial, unless I rule the witness is privileged to refuse to answer on constitutional or other grounds.

The fact a witness refuses to answer a question after being instructed by me to answer may be considered by the jury as one of the factors in determining the credibility of the witness and the weight his or her testimony deserves.

---

[15] Adapted from 3 Fed. Jury Prac. & Instr. § 105:10 (6th ed.).

## INSTRUCTION NO. 14

Summary Charts and Demonstrative Aids

The parties have presented exhibits in the form of charts and summaries. These exhibits purport to summarize the underlying evidence that was used to prepare them and were shown to you to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or documents upon which they are based and are not themselves independent evidence. Therefore, you are to give no greater weight to these charts and summaries than you would give to the evidence on which they are based.

It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.

Also, at various times during the trial, the parties have used demonstrative aids to assist you in considering the evidence or testimony at trial. These demonstrative aids are not evidence. However, you may consider these aids if you find them useful in assessing the evidence or testimony.

## INSTRUCTION NO. 15

<u>Persons Not on Trial</u>

During the trial, you heard the names of several other individuals mentioned in connection with this case. Some of those other individuals have been mentioned in connection with the parties' claims and defenses.

I instruct you that you may not draw any inference, favorable or unfavorable, towards Mr. Pauwels or BNYM from the fact that there may be people who are not on trial in this case. Further, you may not speculate as to the reasons why those other people are not on trial, or what became of them in the legal system. Those matters are wholly outside your concern and have no bearing on your duties as jurors in this case.

## INSTRUCTIONS AS TO SPECIFIC CLAIMS

## PLAINTIFF'S INSTRUCTION NO. 16[16]

### Summary of the Case

Before I instruct you on the specific claim that Mr. Pauwels has raised against BNYM and BNYM's defenses, I will provide you with a brief overview of the case.

Mr. Pauwels alleges that he developed a proprietary financial model—known as the "Pauwels Model"—and a set of related spreadsheets (the "Pauwels Model Spreadsheets") to help him in evaluating BNYM's wind-energy investments. He contends that in contravention of his express instructions, and contrary to his understanding with BNYM, the Defendants took for themselves and shared these Pauwels Model Spreadsheets, without his authorization. Mr. Pauwels alleges that this enabled BNYM and Deloitte to continue using and deriving value from his work product after BNYM had ended its relationship with him.

Mr. Pauwels alleges that BNYM never paid him for the ownership or use of the Pauwels Model Spreadsheets. Therefore, according to Mr. Pauwels, by making use of his model and spreadsheets in this manner, BNYM obtained benefits equal to the cost of developing a comparable analytical tool. Mr. Pauwels claims that, under these circumstances, BNYM was enriched at his

---

[16] **DISAGREEMENT**.  Plaintiff disagrees that the Pauwels Model Spreadsheets should be referred to simply as "Pauwels Spreadsheets."  As the Second Amended Complaint has made clear, Plaintiff provided certain kinds of spreadsheets to BNYM as part of his analysis and work for the bank.  Second Amended Complaint [Dkt. 63] ¶ 42 (noting that Plaintiff "provid[ed] BNYM with highly simplified Excel spreadsheets").  Simply referring to the generic term "spreadsheets" may mislead the jury into believing that this case concerns *any* spreadsheets that Plaintiff provided to BNYM, and not specifically his Pauwels Model and Pauwels Model Spreadsheets.

Additionally, Plaintiff does not agree with Defendants' formulation of the final sentence in Instruction No. 16.  Saying that BNYM "hired Mr. Pauwels" could give the jury the impression that Plaintiff was an employee of the bank and that his work product belonged to the bank.  Rightly or wrongly, saying that Plaintiff was "hired" by BNYM could skew the jury's perception of the case.  Plaintiff therefore proposes its more neutral formulation: "when Mr. Pauwels began performing work for Defendants as an independent contractor."

expense, and that equity and good conscience do not permit BNYM to retain those benefits without compensation.

BNYM denies these allegations and contends that it did not use or benefit from Mr. Pauwels' materials as he claims.  BNYM contends that it paid Mr. Pauwels in full for the preparation and delivery of his spreadsheets, and that it had the right to use the spreadsheets as it wished, including by sending the spreadsheets to Deloitte.  It also contends that Deloitte did not copy or duplicate the spreadsheets, and that it paid Deloitte to develop its own software to use for the monitoring of wind energy investments.

Mr. Pauwels brings a single claim against BNYM for unjust enrichment.  BNYM denies that it used the spreadsheets for any purpose beyond what was contemplated when Mr. Pauwels began performing work for Defendants as an independent contractor.

## DEFENDANTS' INSTRUCTION NO. 16

### Summary of the Case

Before I instruct you on the specific claim that Mr. Pauwels has raised against BNY and BNY's defenses, I will provide you with a brief overview of the case.

Mr. Pauwels alleges that he developed a proprietary financial model—known as the "Pauwels Model"—and a set of related spreadsheets (the "Pauwels Spreadsheets")[17] to help him in evaluating BNY's wind-energy investments. He contends that in contravention of his express instructions, and contrary to his understanding with BNY, the Defendants took for themselves and shared these Pauwels Spreadsheets, without his authorization. Mr. Pauwels alleges that this enabled BNY and Deloitte to continue using and deriving value from his work product after BNY had ended its relationship with him.

Mr. Pauwels alleges that BNYM never paid him for the ownership or use of the Pauwels Spreadsheets. Therefore, according to Mr. Pauwels, by making use of his model and spreadsheets in this manner, BNY obtained benefits equal to the cost of developing a comparable analytical tool. Mr. Pauwels claims that, under these circumstances, BNY was enriched at his expense, and that equity and good conscience do not permit BNY to retain those benefits without compensation.

BNY denies these allegations and contends that it did not use or benefit from Mr. Pauwels' materials as he claims. BNY contends that it paid Mr. Pauwels in full for the preparation and delivery of his spreadsheets, and that it had the right to use the spreadsheets as it wished, including by sending the spreadsheets to Deloitte. It also contends that Deloitte did not copy or duplicate

---

[17] **DISAGREEMENT**. Defendants contend that the Pauwels' spreadsheets should not be referred to as the "Pauwels's Model" or the "Pauwels's Model Spreadsheets." It is undisputed that the so-called "Model" is composed of a number of Excel spreadsheets, and as such, they should be referenced throughout as "Pauwels Spreadsheets."

the spreadsheets, and that it paid Deloitte to develop its own software to use for the monitoring of wind energy investments.

Mr. Pauwels brings a single claim against BNY for unjust enrichment.  BNY denies that it used the spreadsheets for any purpose beyond what was contemplated when it hired Mr. Pauwels as an independent contractor.

## PLAINTIFF'S INSTRUCTION NO. 17[18]

### Unjust Enrichment[19]

---

[18] <mark>DISAGREEMENT</mark>.  A claim for unjust enrichment has three elements in New York: (1) that defendants were enriched, (2) at Plaintiff's expense, and (3) that it would be against equity and good conscience to permit Defendants to retain that benefit.  *Pauwels v. BNYM Corp.*, 2025 WL 1880742, at *4 (S.D.N.Y. July 8, 2025) (citing *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 273 F.3d 196, 306 (2d Cir. 2004))).

Plaintiff rejected Defendants' proposed instruction for Unjust Enrichment because BNYM's version seeks to add a fourth element: the non-existence of a contract that covers the activity upon which Plaintiff's claim is based.  Defendants contend that this should be Plaintiff's burden to prove by a preponderance of the evidence.  Defendants are incorrect.

*First*, Defendants' proposed new element of unjust enrichment asks Plaintiff to prove a negative (*i.e.*, that a contract does not exist/does not cover the subject matter).  In so doing, Defendants are essentially arguing that status quo—the default state of affairs—is that a contract *does* exist and it *does* cover the ownership and use of the Pauwels Model Spreadsheets.  But this is legally incorrect.  "[U]nder New York law a party seeking to enforce a contract must prove not only the contract, but also the terms."  *Dreyfuss v. Etelcare Global Solutions-U.S. Inc.*, 349 Fed. App'x 551, 555 (2d Cir. 2009); *see also generally Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 267 (S.D.N.Y. Sept. 29, 2022) ("Under New York law, applicable here, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence.").

*Second*, Defendants have repeatedly taken the incorrect position that both this Court and the Second Circuit have held that Plaintiff bears the burden of showing the scope of any agreement between the parties.  The Second Circuit's discussion of the contract issue came in the context of addressing "BNYM's argument" and not some primary allegation or contention that Plaintiff had made.  *Pauwels v. Deloitte LLP*, 83 F.4th 171, 188 (2d Cir. 2023) ("[A]ccording to BNYM, because this contract provides that BNYM would pay Pauwels for the Pauwels Model Spreadsheets, it addresses the same subject matter of, and therefore precludes, Pauwels's unjust enrichment claim.").  This Court, likewise, considered the issue in the context of "BNY's contractual argument" and ultimately concluded that "[f]actual disputes doom" the argument because "it is far from clear that Pauwels implicitly agreed to allow BNY to share his spreadsheets with others like Deloitte."  *Pauwels v. BNYM Corp.*, 2025 WL 1880742, *4 & *6 (S.D.N.Y. July 8, 2025).

*Third*, Defendants' proposed instruction incorrectly states that it is "undisputed" that an oral or implied contract exists between the parties.  That is not strictly the case.  Plaintiff willing to concede that an agreement between him and BNYM would cover the subject matter of his unjust enrichment claim.  *At most*, Plaintiff's Second Amended Complaint states that "BNYM paid for Pauwels' advice and expertise, not for his models." [Dkt. 63 ¶ 16.]  This does not, as Defendants have sought to argue, constitute a claim that some agreement existed between the parties, nor is it an allegation specifically about the scope of such an agreement.  Plaintiff is not bringing a contract-based claim, nor is he seeking to enforce a contract in this trial.  Rather it is an allegation that goes to Plaintiff's unjust enrichment claim: *i.e.*, that he was not paid for what BNYM did—take for its own and continue to use the Pauwels Model.

The plaintiff brings a claim against defendants for unjust enrichment.  To succeed on a claim for unjust enrichment, a plaintiff must show that the defendant was enriched at the plaintiff's expense and that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

---

Defendants seem to recognize that their argument about the existence of a contract between the parties is a defense, one that BNYM has asserted and maintained since the Second Circuit's decision.  This defense is even stated as part of BNYM's "Additional Defenses" in their Amended Answer to the Second Amended Complaint, mixed in as part of BNYM's various other affirmative defenses.  [Dkt. 114 at 38 ("Plaintiff's Fifth Cause of Action in the SAC is barred to the extent it is within the scope of the Parties' oral and/or implied contract.").]  Thus, Defendants' proposed instruction is attempting to shift their burden of proving a defense to instead require Plaintiff to disprove their defense, which BNYM would like this Court to instruct the jury to adopt as the default assumption of the facts.  This simply cannot be.  *See generally* 28 N.Y. Prac., Contract Law § 4:10 ("Defenses") (discussing the existence of a valid contract as a *defense* to an unjust enrichment claim).

Defendants' insistence that their defense should impose a new burden on Plaintiff to prove a fourth and novel element of the unjust enrichment claim affects the wording and presentation of the other elements in BNYM's proposed Instruction No. 17 (*e.g.*, asking whether the BNYM's use was "not contemplated by BNYM and Mr. Pauwels when they entered into their relationship").

Overall, Plaintiff has sought to present a more neutral instruction to the jury that is designed to inform the jury of the elements of the claim as defined by New York caselaw, rather than as Defendants would like it to be defined.  Plaintiff has also sought to present a fair restatement of each side's core case theory—again, without attempting to influence the jury to one side or another.

Plaintiff proposed that Defendants could provide a separate instruction on their contractual defense for consideration by the parties, but Defendants have refused.  If the Court finds, as it should, that Defendants bear the burden of proving their defense that some agreement between the parties precludes Plaintiff's unjust enrichment claim, then Plaintiffs are still willing to consider and offer their edits to a separate instruction on BNYM's contract-based defense.

Finally, as the Court will see, Plaintiff has sought in its proposed Instruction No. 17 to explain to the jury that it is not determinative whether BNYM "acted wrongfully," it only matters whether BNYM was "unjustly enriched."  This instruction is reasonable because presenting a claim referred to repeatedly as "unjust enrichment" to a lay jury may lead one or more jurors to assume that "unjust" means wrong or immoral, and to find against Plaintiff because they do not think BNYM's actions rise to the level of intentional malfeasance.

[19] Adapted from instructions given in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.), specifically those found in Trial Tr. at 1047:6-1049:7.  *See also* Dkt. 534 in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.) at 19 ("Unjust Enrichment" jury instruction, citing to *City of Almaty, Kazakhstan et al. v. Mukhtar Abluzazo, et al.*, No. 15-cv-05345-JGK-KHP, Trial Tr. (Dec. 13, 2022) at 1008:11-1010:4).

The plaintiff claims that BNYM was unjustly enriched at the plaintiff's expense by taking the Pauwels Model and Pauwels Model Spreadsheets without his consent, and in violation of his express instructions that these materials should not be shared with or used by others. Plaintiff also contends that BNYM obtained for itself a valuable benefit that it never paid Mr. Pauwels for in taking and using the Pauwels Model Spreadsheets without permission. Mr. Pauwels claims that, as a result, BNYM received substantial benefits, including the continued use of his work product after his engagement ended, and that it would be against equity and good conscience to permit BNYM to retain those benefits without compensation. BNYM denies this claim.

BNYM denies Plaintiff's claims, and argues that it paid for the ownership and use of the Pauwels Model Spreadsheets as part of compensating Mr. Pauwels for his services. Specifically, Defendants contend that they compensated Plaintiff for preparing and delivering the Pauwels Model Spreadsheets to BNYM for the bank's ongoing use and ownership of the Pauwels Model and Pauwels Model Spreadsheets, and therefore there is no basis for an unjust enrichment claim.

To prevail on his unjust enrichment claim, Plaintiff must prove each of the following three elements by a preponderance of the evidence:[20]

**First**: Plaintiff must prove by a preponderance of the evidence that the defendant was enriched. To satisfy this element, Mr. Pauwels must show that BNYM received a benefit from taking or using the spreadsheets that it was not entitled to receive. A "benefit" may consist of money, property, or any other form of advantage, including the value of the Pauwels Model

---

[20] ECF No. 179 (Abrams, J.) (Opinion Denying Motion for Summary Judgment) at 9 (citing *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 273 F.3d 196, 306 (2d Cir. 2004))); *see also* N.Y. Pattern Jury Instr.--Civil 4:2 (noting that "the court determines what facts, if proved, would result in unjust enrichment," but "it is for the jury to determine whether the facts are as claimed").

Spreadsheets;[21] it does not include any cost savings that BNYM achieved by providing the Pauwels Model Spreadsheets to Deloitte.

**Second**: Plaintiff must prove by a preponderance of the evidence that BNYM was enriched at Mr. Pauwels' expense. To satisfy this second element, Mr. Pauwels must show that the benefit BNYM received came at his expense — that is, that BNYM's gain corresponded to a loss of value, opportunity, or control over his work.[22] You may consider whether Mr. Pauwels was deprived of the ability to control the use of his model or to benefit from the spreadsheets that he provided to BNYM, or if BNYM obtained a benefit without compensating Mr. Pauwels for the value of that benefit.

**Third**: Plaintiff must prove by a preponderance of the evidence that it would be against equity and good conscience to permit the defendant to retain what is sought to be recovered.[23] In making this determination, you should consider all of the circumstances surrounding the parties' relationship and the benefit conferred.[24] The question is not whether BNYM acted wrongfully, but whether it would be unjust or inequitable for BNYM to retain the benefit it received.[25]

---

[21] ECF No. 179 at 10 (citing *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983)); *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. b.

[22] ECF No. 179 at 10 (citing *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983)); *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. d.

[23] ECF No. 179 at 10 (citing *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

[24] *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 132 (Bankr. S.D.N.Y. 2011) ("whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction, and, instead, there must be a realistic determination based on a broad view of the human setting involved").

[25] *In re Moyer Group, Inc.*, 586 B.R. 401, 408 (Bankr. S.D.N.Y. 2018) (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189, 194 (1978); *In re Bernard*, 458 B.R. at 132).

If you find that Plaintiff has proven each of these elements by a preponderance of the evidence against BNYM, then you will find that the Plaintiff has proven the elements of his claim of unjust enrichment.  You will then go on to consider BNYM's affirmative defenses.

On the other hand, if you find that the Plaintiff has failed to prove any of the elements of unjust enrichment by a preponderance of the evidence against BNYM, then you must find for BNYM on this claim, and you will not go on to consider any affirmative defenses.

**DEFENDANTS' INSTRUCTION NO. 17**

Unjust Enrichment

To prevail on his claim for unjust enrichment, Mr. Pauwels must prove by a preponderance of the evidence each of the following elements:  (1) that he was not paid for the preparation and delivery of the spreadsheets to BNY; (2) that BNY was unjustly enriched by its use of the spreadsheets; (3) that the unjust enrichment was at Mr. Pauwels' expense; and (4) that it would be against equity and good conscience to permit BNY to retain that benefit.[26]

Your task with regard to this claim is to consider each of these 4 points:

**First:**  It is undisputed that there was an oral or implied contract between Mr. Pauwels and BNY.[27]  You must determine whether that oral or implied agreement between Mr. Pauwels and

---

[26] ECF No. 179 (Abrams, J.) (Opinion Denying Motion for Summary Judgment) at 9 (citing *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 273 F.3d 196, 306 (2d Cir. 2004))).; *see also* N.Y. Pattern Jury Instr.--Civil 4:2 (noting that "the court determines what facts, if proved, would result in unjust enrichment," but "it is for the jury to determine whether the facts are as claimed").

[27] **DISAGREEMENT**.  Defendants contend that the jury must make a predicate factual finding as to whether the Parties' oral and/or implied-in-fact contract covered the Bank's use of Pauwels Spreadsheets, and that an instruction on that issue is necessary. As the Second Circuit and this Court held, repeatedly, there is no dispute that the Parties had an oral and/or implied contract governing certain terms of the work that Pauwels provided to the Bank. Dkt. 63 ¶ 16 ("BNYM paid for Pauwels' advice and expertise, not for his models. . . ."); ¶17 ("[Pauwels] worked as an independent advisor, providing BNYM with outside expertise and analysis; he was compensated for his services based on invoices that he would submit periodically to BNYM for processing."); ¶ 112 ("BNYM paid Pauwels for his analysis and advice . . . ."). In his pleadings and his arguments to the Second Circuit, Plaintiff contended that the Bank "paid Pauwels's advice and expertise, not for his models." No. 22-21, at 26. That is the very basis for his unjust claim – he is contending that his preparation and delivery of spreadsheets was beyond the scope of the parties' oral or implied contract. The Bank disputes this factual assertion by Plaintiff, and contends that any work that Pauwels did on the spreadsheets was all within the scope of his contract to perform services as an independent contractor.

Based on Plaintiff's "well-pleaded" factual allegations, and taking Plaintiff's allegations as true, the Second Circuit found the "contract entered into by Pauwels and BNYM did not address the

BNY covered the Bank's ability to use the spreadsheets that Mr. Pauwels was paid to prepare and deliver. An unjust enrichment claim exists only when there is no agreement that covers the subject matter of the dispute. In other words, if you find that Pauwels was compensated for preparing and delivering the spreadsheets to BNY, then there is no basis for his unjust enrichment claim. Or if you find that there was an oral agreement or understanding relating to the Bank's ability to use the spreadsheets, then there is also no basis for an unjust enrichment claim.[28]

**Second**: You must determine whether BNY was enriched by its use of the spreadsheets in ways that were not contemplated by BNY and Mr. Pauwels when they entered into the relationship. To satisfy this second element, Mr. Pauwels must show that BNY received a benefit from its use of the spreadsheets that it was not entitled to receive. A "benefit" may consist of money, property,

---

sale or transfer of Pauwels's underlying intellectual property to BNYM, as opposed to his advice that he derived from using the Pauwels Model." *Id*. at 31. This Court similarly accepted Plaintiff's factual assertion as a basis for denying BNY's summary judgment motion. As this Court pointed out in its opinion, "BNY is correct that parties may form an implied contract through their course of conduct, and may not later sue for unjust enrichment over conduct that falls within the scope of their contractual duties." Dkt. 179 at 14. So that leaves the parties and the court with a critical, threshold question to be decided: whether Pauwels was paid to create and deliver the spreadsheets to BNY, such that this work was within the scope of the oral or implied contract. To determine whether an oral or implied contract exists, the factfinder must examine the "'facts and circumstances' surrounding the 'conduct of the parties'—an inherently fact intensive inquiry." *Id.; see also* Dkt. 250 at 2-3 (noting the parties' dispute regarding the scope of the oral and/or implied-in-fact contract); *Goldman v. Metropolitan Life Ins. Co*., 5 N.Y.3d 561, 572 (N.Y. 2005) ("Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved . . . ."). Thus, the jury must decide that predicate factual dispute—i.e., whether the Bank's use the spreadsheet was contemplated by the oral and/or implied-in-fact contract between the Parties—before turning to the question of whether Plaintiff has met his burden of proving that the bank was unjustly enriched. Since it is Plaintiff who is asserting that his work on the spreadsheets was outside the scope of the parties' contract, he bears the burden of proving that essential fact. BNY submits that its proposed instruction, which Plaintiff has rejected, properly apprises the jury of its responsibilities in this regard.

[28] *See Pauwels v. Deloitte LLP,* 83 F.4[th] 171 (2d Cir. 2023)"under New York law, the existence of a contract governing a subject matter precludes recovery on an unjust enrichment claim); *Clark-Fitzpatrick v. Long Island R.R. Co,,* 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987).

or any other form of advantage, but it does not include any supposed cost savings that BNY may have achieved by providing the spreadsheets to Deloitte.[29]

**Third**: You must determine whether BNY was unjustly enriched at Mr. Pauwels' expense. To satisfy this second element, Mr. Pauwels must show that the benefit BNYM received came at his expense — that is, that BNY's gain corresponded to a loss of value, opportunity, or control over his work.[30] You may consider whether Mr. Pauwels was deprived of the ability to benefit from the spreadsheets that he provided to BNY, or if BNY obtained a benefit without compensating Mr. Pauwels for the spreadsheets that he provided.

**Fourth**: The essential inquiry in any action for unjust enrichment is whether it would be against equity and good conscience to permit the defendant to retain what is sought to be recovered.[31] In making this determination, you should consider all of the circumstances surrounding the parties' relationship and the benefit conferred.[32] The question is whether it would be unjust or inequitable for BNY to retain the benefit it received without additional payments to Mr. Pauwels.[33][34]

---

[29] ECF No. 179 at 10 (citing *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983)); *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. B; *E.J. Brooks v. Cambridge Securities,* 31 N.Y.3d 441, 105 N.E.3d 301 (2018).

[30] ECF No. 179 at 10 (citing *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983)); *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. d.

[31] ECF No. 179 at 10 (citing *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972)).

[32] *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 132 (Bankr. S.D.N.Y. 2011) ("whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction, and, instead, there must be a realistic determination based on a broad view of the human setting involved").

[33] *In re Moyer Group, Inc.*, 586 B.R. 401, 408 (Bankr. S.D.N.Y. 2018) (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189, 194 (1978); *In re Bernard*, 458 B.R. at 132).

[34] ==DISAGREEMENT==. The Bank disputes that the jury should be instructed on, or asked to decide in the verdict sheet, the "earliest ascertainable date that Plaintiff had a claim for unjust enrichment"—as Plaintiff proposes in his instructions. Plaintiff concedes that it is for the Court,

---

not the jury, to decide the amount of prejudgment interest. Indeed, neither Plaintiff's proposed jury instructions nor proposed verdict sheet asks the jury to make such a finding. Because it is within the Court's province to determine the amount of prejudgment (if any), any determination by the jury on the "earliest ascertainable date" of any unjust enrichment to the Bank is irrelevant and will not aid the Court particularly given Plaintiff's theory of the case. Plaintiff contends that the Bank obtained a benefit on multiple occurrences every time it "used" Pauwels's spreadsheets—i.e., that the Bank's claimed unjust benefit materialized over time. If the jury agrees, then prejudgment interest must be calculated based on not only the timing of each enrichment to the Bank, but also the monetary extent of each enrichment. A jury's mere determination of the "earliest" date of any enrichment to the Bank cannot aid the Court in this determination. Moreover, Plaintiff's proposed instruction that the jury can select a "single reasonable intermediate date" invites speculation, rather than reasonable certainty.  Any prejudgment interest award should correspond to the actual timing of the purported ill-gotten gain, rather than a hypothetical or fictitious date.

## PLAINTIFF'S INSTRUCTION NO. 18[35]

Unjust Enrichment Damages[36]

If you find for Mr. Pauwels on his claim for unjust enrichment, you must next determine

the amount of damages that should be awarded to him on this claim. To do so, you must determine

the amount by which BNYM was unjustly enriched. In other words, you must determine the value

---

[35] **DISAGREEMENT**.  Plaintiff has proposed his own Instruction No. 18 because like BNYM's proposed Instruction No. 17, their proposed Instruction No. 18 included incorrect multiple references to an agreement between the parties.

Additionally, Plaintiff's proposed instruction includes a direction for the jury to determine the "earliest ascertainable date that Plaintiff had a claim for unjust enrichment."  This language was included to assist the Court in computing pre-judgment interest at the conclusion of the trial. The Second Circuit has held that prejudgment interest is mandatory under CPLR 5001(a) in "quantum meruit claims."  *Stillman v. InService America, Inc.*, 455 Fed. App'x 48, 51 (2d Cir. 2012).  And while this Court has "wide discretion to determine a reasonable date from which to calculate interest," that does not preclude seeking the jury's conclusion regarding the earliest date on which unjust enrichment began/occurred—particularly given that the jury will have just heard all the evidence in the case.  This instruction, therefore, is taken from a similar one given earlier this year in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.).

In rejecting this portion of Plaintiff's proposed instruction, Defendants misstate Plaintiff's "theory of the case."  Contrary to what Defendants argue, Plaintiff does not contend that BNYM derived repeated periodic benefit from using the Pauwels Model and Pauwels Model Spreadsheets—Plaintiff's theory is more straightforward and in line with the Second Circuit's articulation:  "BNYM financially benefitted from its use of the Pauwels Model Spreadsheet and model even though it failed to compensate Pauwels for BNYM's (or Deloitte's) unfettered use of those materials."  *Pauwels*, 83 F.4th at 188.  Plaintiff's theory, therefore, is that BNYM benefitted the moment they took the Pauwels Model Spreadsheets for their own.

Finally, Plaintiff disagrees with Defendants' attempt to include an instruction that the amount of damages must be proven "with reasonable certainty."  The authority BNYM provided to support such an instruction is *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000), which dealt with a claim for lost profits (not unjust enrichment) and held that the amount of lost profit or the value of a lost asset should be established with "reasonable certainty."  *Id.* at 173-77.

As the instructions in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.) demonstrate, however, that kind of instruction is not given in an unjust enrichment case.

[36] Adapted from instructions given in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.), specifically those found in Trial Tr. at 1053:11-1054:5.  *See also* Dkt. 534 in *City of Almaty, Kazakhstan v. Sater*, No. 19-CV-2645 (S.D.N.Y.) at 25 ("Unjust Enrichment" jury instruction, citing *City of Almaty, Kazakhstan et al. v. Mukhtar Abluzazo, et al.*, No. 15-cv-05345-JGK-KHP, Trial Tr. (Dec. 13, 2022) at 1011:25-1012:20).

of the property, money, or benefit that BNYM derived from its taking and using the Pauwels Model and Pauwels Model Spreadsheets.  As I have already instructed, this amount should not include any savings that BNYM achieved by providing the Pauwels Model Spreadsheets to Deloitte.[37]

Therefore, the measure of recovery is not the amount of Mr. Pauwels' loss, but is the amount of BNYM's enrichment—that is, the reasonable value of the benefit it received. On your verdict sheet, the amount of damages you indicate should be equal to that amount. It is Mr. Pauwels' burden to prove this amount by a preponderance of the evidence.

If you find for Plaintiff on the unjust enrichment claim, you will be asked to provide the earliest ascertainable date that Plaintiff had a claim for unjust enrichment.  If you find that Plaintiff incurred damages for unjust enrichment at various times, you may select a single reasonable intermediate date.[38]

---

[37] ECF No. 179 at 10; N.Y. Pattern Jury Instr.--Civil 4:2.

[38] *Stillman v. InService America, Inc.*, 455 Fed. App'x 48, 51-52 (2d Cir. 2012) ("[W]e conclude that the New York Court of Appeals would likely agree with the reasoned analysis set forth in cases holding that pre-judgment interest on quantum meruit claims is mandatory under CPLR 5001(a).").

## DEFENDANTS' INSTRUCTION NO. 18

Unjust Enrichment Damages

If you find for Mr. Pauwels on his claim for unjust enrichment, you must next determine the amount of damages that should be awarded to him on this claim, if any. To do so, you must determine the amount by which BNY was unjustly enriched. In other words, you must determine the value of the property, money, or benefit that BNY derived from its use of the Pauwels Spreadsheets, if any.  But as I have already noted, you should not consider any arguable cost savings that BNY achieved in its relationship with Deloitte.  The question before you is whether there is some other benefit that BNY received unjustly, separate and apart from any cost savings in what it paid to Deloitte, and if so, what is the amount of that benefit.[39].[40] The measure of recovery, if any is the amount of BNY's unjust enrichment—that is, the reasonable value of the benefit it received unjustly and at Mr. Pauwels' expense.   On your verdict sheet, the amount of damages you indicate, if any, should be equal to that amount.  Mr. Pauwels bears the burden of proving the amount of BNY's unjust enrichment, if any, with reasonable certainty.  You may not engage in speculation, conjecture or guesswork in coming up with that amount.  If Mr. Pauwels does not satisfy his burden of proving the amount with reasonable certainty, then an award of damages would not be appropriate. *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000).

---

[39] **DISAGREEMENT**.  Plaintiff has rejected this proposed language about avoided third party costs, but BNY's instruction is plainly consistent with the standard announced by the New York Court of Appeals, and it is necessary to prevent the jury from basing an award on an impermissible consideration.  *See E.J. Brooks v. Cambridge Securities,* 31 N.Y.3d 441, 105 N.E.3d 301 (2018).

[40] ECF No. 179 at 10; N.Y. Pattern Jury Instr.--Civil 4:2.

**FINAL INSTRUCTIONS CONCERNING PROCEDURE**

**INSTRUCTION NO. 19**

Juror use of electronic communication technologies[41]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, BlackBerry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

---

[41] Adapted from 3 Fed. Jury Prac. & Instr. § 103:04 (6th ed.).

**INSTRUCTION NO. 20**

<u>Duty to deliberate</u>[42]

I have now outlined for you the rules of law applicable to the claim in this case and the processes by which you should weigh the evidence and determine the facts. In a few minutes you will retire to the jury room for your deliberations.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[42] Adapted from 3 Fed. Jury Prac. & Instr. § 106:01 (6th ed.).

## INSTRUCTION NO. 21

<u>Election of foreperson</u>[43]

Upon retiring to the jury room, you will select one of you to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

In order that your deliberations may proceed in an orderly fashion, you must have a foreperson, but of course, the foreperson's vote is not entitled to any greater weight than that of any other juror.

Verdict forms have been prepared for your convenience.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree. You will then return with your verdict to the courtroom.

---

[43] Adapted from 3 Fed. Jury Prac. & Instr. § 106:04 (6th ed.).

## INSTRUCTION NO. 22

### Communications between court and jury during jury's deliberations[44]

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing. I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

If you wish to have some part of the testimony repeated, or to see any of the exhibits, you may make that request. If you request to see all or some of the exhibits, we will send them into the jury room for you. If you request to see trial transcripts of certain portions of the testimony, I will send the requested portions of the trial transcript into the jury room. You can have any of the testimony read back to you or made available to you in transcript form. I suggest, however, that you be specific in your requests so as to avoid hearing or reading testimony that you do not need to assist you in your deliberations.

---

[44] Adapted from 3 Fed. Jury Prac. & Instr. § 106:08 (6th ed.).

I will also provide each of you with a copy of these instructions. Please remember that you must follow these instructions as a whole, and should not rely on any one portion in disregard of remaining portions.