UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRÉ PAUWELS,<br><br>      Plaintiff,<br><br>      v.<br><br>THE BANK OF NEW YORK MELLON CORPORATION, THE BANK OF NEW YORK MELLON, DELOITTE LLP, DELOITTE USA LLP, and DELOITTE TAX LLP,<br><br>      Defendants. | Civil Action No. 1:19-cv-02313-RA-KHP |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**

                                                    MORGAN, LEWIS & BOCKIUS LLP

                                                    Michael L. Banks (*admitted pro hac vice*)
                                                    2222 Market Street
                                                    Philadelphia, PA 19103-3007
                                                    215.963.5000

                                                    Keri L. Engelman (*admitted pro hac vice*)
                                                      1 Federal Street
                                                      Boston, MA 02110-1726
                                                      617.341.7700

                                                    Elisa C. Egonu
                                                    101 Park Avenue
                                                    New York, NY 10178-0060
                                                    212.309.6000
                                                    elisa.egonu@morganlewis.com

                                                    *Attorneys for Defendants The Bank of New York Mellon and The Bank of New York Mellon Corporation*

I.  **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants The Bank of New York Mellon Corporation and The Bank of New York Mellon (together, "Defendants" or "BNY") respectfully submit this Memorandum of Law in support of their motion for judgment as a matter of law at the close of Plaintiff's case in chief.

An unjust enrichment claim is viable only in the absence of a contract covering the subject matter of the dispute. Throughout this trial, Plaintiff has testified several times that he and BNY had an explicit agreement covering the subject matter of this dispute. First, he testified that there was an agreement that the Bank could use his model internally, as demonstrated by him voluntarily sending it to them on numerous occasions. Nov. 12 Tr. at 89:12-18. Second, he testified that, starting from the very first wind investment in 2014, there was a "clearly understood" agreement that the Bank would maintain the confidentiality of his model by not sending it to third parties. Nov. 12 Tr. at 99:16-100:8. Accordingly, Plaintiff's primary allegation is that BNY breached a material term of an express contract by sending his model to Deloitte. That assertion states a potential claim for breach of contract, but not for unjust enrichment.

Plaintiff's claim also fails because his only argument regarding damages is that BNY unjustly benefited from sharing his spreadsheets with Deloitte. He makes no claim that the Bank unjustly benefited from its own use of his spreadsheets, and even concedes that BNY had the right to do so. Nov.12 Tr. at 89:12-18. What he complains about is the use of the spreadsheets by Deloitte. And in that regard, the only arguable benefit to the Bank is third-party cost savings, which is precluded as a basis of recovery under *E.J. Brooks II*.

1

## II.   LEGAL STANDARD

Rule 50 provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(a). The court must consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001). The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. *Id.*

## III.   ARGUMENT

### A.   Plaintiff's Testimony Forecloses His Unjust Enrichment Claim

Plaintiff testified several times that he and BNY had an express contract covering the subject matter of this dispute. For example, he testified on direct examination that under the terms of the agreement, the Bank could use his model for internal decision making and evaluation.

> Q:   Now, did you ever send any of these Pauwels Model spreadsheets to BNY?
>
> A:   I did. I did share -- I frequently shared my models with BNY Mellon. I did so because it was frequently necessary for the bank to check some things, and they needed to see my model to check those things, more specifically, the accounting treatment.

Nov. 12 Tr., at 89:12-18. He admitted again on cross-examination that his express agreement with Sarmasti and Hegedus allowed the Bank to use his spreadsheets internally, and that he sent copies of his spreadsheets to the Bank so that its employees could consider his conclusions and analysis. *Id.* at 235:6-7; 202:14-18.

Plaintiff's only complaint at trial was that the Bank sent his spreadsheets to Deloitte in breach of an express contract that he reached with Sarmasti and Hegedus. He testified explicitly on direct examination that there was an express agreement concerning the confidentiality of his spreadsheets and the restrictions on the Bank's ability to share those spreadsheets with third parties.

> Q: Was BNY in turn free to send the Pauwels Model spreadsheets on to the sponsors and others?
>
> A: No. We had several discussions about this subject, and I made it clear to the bank that these were my models, not to be shared with third parties. There could have been no misunderstanding on that.
>
> Q: What was your understanding?
>
> A: The understanding between me and the bank – my understanding of the arrangement was that, in instances where I shared my spreadsheets with the bank, that they were shared under the condition that the bank would not forward them to anybody else; they could not be forwarded to the sponsor, they could not be forwarded to the arranger, they could not be forwarded to other investors. So I made it clear during several discussions with the bank that I did not want that to happen, and the *bank did agree with that*.

Nov. 12 Tr., at 89:23-90:23; *see also Id.*, at 99:2-5; 100:1-15, 101:12-14, 103:1-12.

On cross examination, Plaintiff reiterated this point.

> Q: Your position in this case, in this lawsuit, is that you and a few people at the bank specifically discussed limitations on the bank's ability to use your spreadsheets, right?
>
> A: Correct.
>
> Q: You said you talked to Reza Sarmasti and Laura Hegedus about that. Is that correct?
>
> A: Correct.
>
> Q: And they agreed with you that the bank could only use your spreadsheets internally; that your spreadsheets could not be sent to third parties without your consent. Is that your position?
>
> A: Correct.

3

> Q: *So you're saying there was actually an agreement on that point between you, on the one hand, and Mr. Peterson and Ms. -- yeah -- excuse me -- Mr. Sarmasti and Ms. Hegedus on the other hand?*
>
> A: *Correct.*
>
> Q: Was this important to you, this agreement you say you had?
>
> A: Absolutely.
>
> Q: You thought you had developed a valuable model, and that it was important that the bank not improperly use your model, correct?
>
> A: Absolutely.
>
> Q: If you had an agreement with the bank on this point, and it was an important part of what you were doing and billing them $2.8 million for, why didn't you get it in writing?
>
> A: Mr. Banks, as was clearly established yesterday, I had a very close relationship with Mr. Kevin Peterson. I had known him for about at that time, so that was 2009, we're talking here 2014, I had known him for almost 20 years. I thought he was an honorable man, and I did not see the need to have a written agreement because in the end *I got what I wanted, the bank got what it wanted, the parties acted in consideration for each other*, and I did not see the need for an agreement. I made the mistake, Mr. Banks, of trusting the bank.

Nov. 13 Tr., at 234:24-236:8; *see also Id.*, at 237:12-238:4 (repeating three more times that Plaintiff had an agreement with members of the Bank concerning confidentiality).

Plaintiff literally laid out the elements of contract formation when describing his agreement with the Bank on the confidentiality of his spreadsheet. Thus, the open question that led to the Second Circuit's remand of the unjust enrichment claim — whether the scope of the contract between the parties covered the Bank's ability to share the spreadsheets with third parties — has been answered in Plaintiff' case in chief. *See discussion in Pauwels v. Deloitte LLP*, 83 F.4th 171, 187 (2d Cir. 2023).

4

This position taken by Plaintiff at trial is an abrupt turn. Initially, in his pleading and in prior arguments to this Court and the Second Circuit, Plaintiff asserted that his contract with the Bank did not address the Bank's use or sharing of the spreadsheets that he delivered to BNY. *Id.* He contended, and the Second Circuit agreed, that if the parties did not address this topic in their oral agreement, the only recourse available to Plaintiff for an allegedly unauthorized use or sharing of the spreadsheets was a quasi-contractual claim for unjust enrichment. Now, this basic premise has crumbled in the wake of Plaintiff's trial testimony, which is fatal to Plaintiff's attempt to maintain his quasi-contract claim.

Under New York law, if the parties enter into a contract governing a particular subject matter, recovery in quasi contract for disputes arising out of the same subject matter is precluded. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 521 N.Y.S.2d 653, 656 (1987) ("A quasi contract only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment."). Unjust enrichment is not "a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

As Judge Jacobs noted in his dissenting opinion, "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." *Pauwels*, 83 F.4th at 192 (J. Jacobs, dissenting) (citing *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 338 (S.D.N.Y. 2023) (addressing unjust enrichment at motion to dismiss stage) (citation omitted)). "[A] person who is party to an agreement covering a service can have no reasonable expectation of compensation beyond what

5

the contract provides and, if the contract indicates the person is to receive no compensation, can have no expectation of receiving compensation." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, No. 22-CV-9766 (LJL), 2024 WL 4493644, at *11 (S.D.N.Y. Oct. 15, 2024) (addressing unjust enrichment at summary judgment phase).

This rule applies with equal force to implied-in-fact contracts. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006). In *Beth Israel*, the Second Circuit determined that both express and implied-in-fact contractual relationships existed between ten New York hospitals and Horizon, a New Jersey-based nonprofit health insurance plan. *Id.* at 586–88. These contracts governed the subject matter of the case, a dispute over hospital reimbursement rates, and therefore precluded the hospitals from recovering for unjust enrichment. *Id.* at 586–88. "Because we have determined, as the Hospitals insisted that we should, that contractual relationships did exist between Horizon and the Hospitals, the unjust enrichment claims must be dismissed." *Id.* at 586.

At the motion to dismiss stage of this case, the Second Circuit determined based on Plaintiff's allegations that the implied-in-fact contract between Plaintiff and BNY did not address the sale or transfer of Plaintiff's spreadsheets. *Pauwels*, 83 F.4th at 188. At that point in the litigation, the Court was required to accept Plaintiff's allegations as true and consider only the four corners of the complaint. *Id.* Now, however, it is quite clear that the contract between the parties explicitly addressed the transfer and use of Plaintiff's spreadsheets.

Of course, the parties still disagree about the terms of the contract. Plaintiff contends that the parties' express agreement prevented the Bank from sharing his spreadsheets, and the Bank contends the opposite. But the disagreement about the terms of the contract is immaterial to the question presented by this motion. The question raised now, at the close of Plaintiff's case, is

6

whether the contract between the parties addressed the *subject matter of the dispute*, not whether one party's interpretation or the other is correct. As the Second Circuit explained in remanding the unjust enrichment claim, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Pauwels*, 83 F.4th at 187 (quoting *Clark-Fitzpatrick*, 521 N.Y.S.2d at 656).

The difference between a disagreement about the scope of the contract and a dispute over the specific terms is perhaps best illustrated by way of an analogy. Suppose a homeowner entered into an oral agreement with a contractor to have a house painted. The work is completed, and the parties disagree about the contractual price; the homeowner contends that he agreed to pay $15,000, and the contractor says the parties agreed to a $20,000 payment. The contractor's recourse is to bring a claim for breach of contract and to present evidence of an agreement to pay the higher price. An unjust enrichment claim, however, is not available, as there was an express contract on point.

In *Frio Energy Partners,* this Court provided another useful analogy to show when the scope of an existing contract includes the subject matter of an action and precludes recovery for unjust enrichment. 680 F. Supp. 3d at 338.

> A prepares preliminary designs and cost estimates for the construction of a bridge contemplated by City. The parties agree that A will be compensated for its services only if City decides to construct the bridge and to award the contract to A. The project is abandoned. Five years later City revives the project, using A's earlier studies for planning purposes but awarding the contract to B. A sues City for breach of contract and unjust enrichment, pointing out (correctly) that City has enjoyed the benefit of work for which A was never paid. Yet City's use of A's plans without compensation is in accordance with the terms of the parties' valid agreement. That being so, there is no unjust enrichment of City and no liability in restitution. *Id.* (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2).

This example tracks perfectly with Plaintiff's allegations in this case. Plaintiff prepared computation models for wind energy investments contemplated by the Bank. The parties agreed that Plaintiff would be compensated for his services—which he was. Plaintiff also contends that part of this agreement was that the Bank would not share his spreadsheets with any third parties. Years later, Plaintiff claims that the Bank breached this agreement by giving his spreadsheets to Deloitte. An action for breach of contract would have been a proper recourse, but Plaintiff never pursued such a claim.

### B.    Plaintiff Is Seeking Damages Based on Third-Party Cost Saving

Finally, because Plaintiff agreed to BNY's internal use of his spreadsheets, he cannot prove that the Bank was unjustly enriched by its own reference to the spreadsheets in reviewing the performance of its wind energy investments. Moreover, even if he were to contend that his agreement to allow BNY to use his spreadsheets was limited to the duration of the engagement (although there was no such testimony from him at trial), Plaintiff has introduced no evidence suggesting that after he ceased doing work for BNY, the Bank continued to use or even refer to his spreadsheets in any way. Instead, his only claim is that the Bank was unjustly enriched by sharing the spreadsheets he provided to the Bank with Deloitte. Accordingly, the only unjust gain

8

that BNY could have received from sharing the spreadsheets with Deloitte is the expense it allegedly saved by not having to pay Deloitte to develop a model on its own from scratch. This is the exact type of third-party cost savings damages calculation forbidden by the New York Court of Appeals in *Brooks II*. *E.J. Brooks Co v. Cambridge Security Seals* ("Brooks II"), 31 N.Y.3d 441 (N.Y. 2018).

Furthermore, even if there were some legal basis for a damages claim, Plaintiff's purported measure of the Bank's supposed unjust benefit bears no relationship to the evidence at trial. Plaintiff offers a measure of damages that projects the benefit the Bank will supposedly receive over a ten-year period. But, as noted above, he has not introduced evidence that BNY used his spreadsheets after 2017 to monitor its wind energy investments, let alone that it continues to do so on a regular basis. In fact, there would have been no reason for the Bank to use the Pauwels spreadsheets for ongoing monitoring. Deloitte has been doing the wind energy investment tracking since late 2016 using its own software. And even if Deloitte had copied parts of the Pauwels "model" in developing its software — which is sharply disputed, and which will be rebutted if this case proceeds any further — the ostensible benefit to the Bank from Deloitte's work falls back into the third-party cost savings realm. Simply stated, Plaintiff has not provided a measure of damages that projects the Bank's purported gain with reasonable certainty.

## IV. CONCLUSION

For the foregoing reasons, BNY respectfully requests that this Court grant judgment as a matter of law under Rule 50(a) in its favor, dismissing Plaintiff's claim for unjust enrichment with prejudice.

Dated:  November 17, 2025

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By:  */s/ Michael L. Banks*

Michael L. Banks (*admitted pro hac vice*)
2222 Market Street
Philadelphia, PA 19103-2921
T: 215.963.5000
michael.banks@morganlewis.com

Keri L. Engelman (*admitted pro hac vice*)
1 Federal Street
Boston, MA 02110-1726
T: 617.341.7700
keri.engelman@morganlewis.com

Elisa C. Egonu
101 Park Avenue
New York, NY 10178-0060
T: 212.309.6000
elisa.egonu@morganlewis.com

*Attorneys for Defendants The Bank of New York Mellon and The Bank of New York Mellon Corporation*